**SUPERIOR COURT
OF THE
STATE OF DELAWARE**

PAUL R. WALLACE
JUDGE

NEW CASTLE COUNTY COURTHOUSE
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
(302) 255-0660

Date Submitted: March 12, 2025
Date Decided: April 10, 2025

Kevin R. Shannon, Esquire
Jaclyn C. Levy, Esquire
Charles P. Wood, Esquire
POTTER ANDERSON & CORROON LLP
1313 North Market Street
Wilmington, Delaware 19801

Jeffrey L. Moyer, Esquire
Srinivas M. Raju, Esquire
Alexandra M. Ewing, Esquire
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
Wilmington, Delaware 19801

Jonathan K. Youngwood, Esquire
Janet A. Gochman, Esquire
Jacob Lundqvist, Esquire
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017

> RE:  *BorgWarner Inc. v. PHINIA Inc.*
> C.A. No. N24C-09-158 PRW CCLD
> Plaintiff's Motion to Dismiss Counterclaims

Dear Counsel:

The Court provides this Letter Opinion in lieu of a more formal written decision resolving Plaintiff BorgWarner's Motion to Dismiss Counterclaims (D.I. 14). For the reasons explained below, the Motion is mostly **DENIED.**

## I.  THE PARTIES

Plaintiff BorgWarner and Defendant PHINIA are both Delaware corporations

with their its principal places of business in Michigan.[1]

## II. CLAIMS AND BACKGROUND

### A. THE SPIN-OFF AND THIS SUIT

BorgWarner spun-off its Fuel Systems and Aftermarket businesses into a separate entity named PHINIA via numerous agreements.[2]  The spin off was completed on July 3, 2023.[3]

More than a year later, BorgWarner filed suit alleging that PHINIA breached their Tax Matters Agreement ("TMA") by keeping over $120 million in refunds from Value Added Taxes ("VAT").[4]  It also seeks a declaratory judgment that PHINIA is obligated to forward any future payment of VAT refunds to BorgWarner.[5]

In response, PHINIA raises numerous defenses and asserts four counterclaims: a request for its own counter declaratory judgment, estoppel, reformation, and breach of the TMA and the Separation Agreement ("SDA")—Tax

---

[1]  Compl. ¶ 5-6 (D.I. 1).

[2]  *Id.* ¶¶ 28-31.

[3]  *Id.* ¶¶ 23-27.

[4]  *Id.* ¶¶ 28-31.

[5]  *Id.* ¶¶ 23-27.

Amounts.[6]  First, PHINIA seeks a declaration that it is not required to pay BorgWarner any VAT refunds relating to the PHINIA business.[7]  Second, PHINIA claims that BorgWarner is not entitled to VAT refunds relating to the PHINIA business via estoppel, which is pled in the alternative.[8]  Third, PHINIA asserts that it is entitled to reformation of the contracts, which is also pled in the alternative, to comport the agreements to the original understanding that VAT refunds relating to PHINIA's business would remain with PHINIA.[9]  And, fourth, PHINIA alleges that BorgWarner is in material breach of the TMA and the SDA.[10]

Now before the Court is BorgWarner's Motion to Dismiss all four of PHINIA's counterclaims.[11]

## B. THE AGREEMENTS

The two relevant agreements are the Separation Agreement ("SDA") and the Tax Matters Agreement ("TMA").[12]  Those agreements state that they are fully

---

[6]  *See generally* Def.'s Answer & Countercl. (D.I. 11).

[7]  *Id.* ¶¶ 64-68.

[8]  *Id.* ¶¶ 69-73.

[9]  *Id.* ¶¶ 74-81.

[10]  *Id.* ¶¶ 82-89.

[11]  *See generally* Pl.'s Mot. to Dismiss Def.'s Countercl. (D.I. 14).

[12]  Pl.'s Mot. to Dismiss Def.'s Countercl. Ex. 1 ("SDA") and Ex. 2 ("TMA") (D.I. 14).

integrated and that they were both jointly drafted by the parties.[13]

### 1. The SDA

The SDA governs the spin-off process.[14]  It contains a transfer clause for the transfer of rights, assets, and liabilities to PHINIA.[15]  The SDA also has a true-up provision that sets a baseline cash adjustment of $300 million for PHINIA and allows for correction after closing.[16]  And, it expressly states that the TMA "[e]xclusively governs all matters relating to Taxes."[17]

### 2. The TMA

The TMA covers the payment of tax liabilities and entitlements to refunds for the spin-off.[18] The parties tax obligations are outlined in § 2.1:

> Parent shall be responsible for all Taxes reported, or required to be reported, on any Joint Return; provided, however, that to the

---

[13]  SDA §§ 11.01(b), 11.18 ("this Agreement shall be construed as if drafted jointly by the Parties, and no presumption or burden of proof shall arise favoring or disfavoring either Party by virtue of the authorship of any provisions hereof."); TMA § 10.17 ("this Agreement shall be construed as if drafted jointly by the Parties, and no presumption or burden of proof shall arise favoring or disfavoring either Party by virtue of the authorship of any provisions hereof.").

[14]  SDA at 1.

[15]  *Id.* § 2.01(a)(i).

[16]  *Id.* § 2.08, Schedule 2.08.

[17]  *Id.* § 2.02:

> a) the TMA shall exclusively govern all matters relating to Taxes between such parties (except to the extent that tax matters relating to employees and employee benefits-related matters are addressed in the EMA).

[18]  TMA at 1.

> extent any such Joint Return includes any Tax Item attributable to any member of the SpinCo Group or the SpinCo Business in respect of any Post-Distribution Period, SpinCo Group shall be allocated all Taxes attributable to such Tax Items in accordance with Section 2.3.[19]

And § 2.5 governs tax benefits, which states:

> Parent shall be entitled to all Tax Benefits (including, in the case of any refund received, any interest thereon actually received) attributable to Taxes the liability for which is allocated to Parent pursuant to this Agreement. SpinCo shall be entitled to all Tax Benefits (including, in the case of any refund received, any interest thereon actually received) attributable to Taxes the liability for which is allocated to SpinCo pursuant to this Agreement.[20]

Most relevant to the interpretation of the agreements, § 10.1 states that "[i]n the event and to the extent that there shall be a conflict between the provisions of this Agreement and the provisions of the Separation Agreement, this Agreement shall control with respect to the subject matter hereof."[21]

## III. APPLICABLE LEGAL STANDARDS

"Under Superior Court Civil Rule 12(b)(6), '[t]he legal issue to be decided is, whether a plaintiff may recover under any reasonably conceivable set of

---

[19]    *Id.* § 2.1(a).

[20]    *Id.* § 2.5(a).

[21]    *Id.* § 10.1.

circumstances susceptible of proof under the complaint.'"[22] "When considering a Rule 12(b)(6) motion, the court (i) accepts as true all well-pled factual allegations in the complaint, (ii) credits vague allegations if they give the opposing party notice of the claim, and (iii) draws all reasonable inferences in favor of the plaintiffs."[23]

But the Court need not "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[24] Nor is the Court required to accept "every strained interpretation of the allegations" brought by the alleging party.[25]

Delaware's pleading standard is "minimal."[26] Dismissal is inappropriate unless "under no reasonable interpretation of the facts alleged could the complaint state a claim for which relief might be granted."[27]

---

[22] *Vinton v. Grayson*, 189 A.3d 695, 700 (Del. Super. Ct. 2018) (quoting *L&L Broad. LLC v. Triad Broad. Co., LLC*, 2014 WL 1724769, at *2 (Del. Super. Ct. Apr. 8, 2014)).

[23] *Ont. Provincial Council of Carpenters' Pension Tr. Fund v. Walton*, 294 A.3d 65, 84 (Del. Ch. 2023) (citing *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011)).

[24] *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011), *overruled on other grounds by Ramsey v. Ga. S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255, 1277 (Del. 2018).

[25] *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001).

[26] *Cent. Mortg. Co.*, 27 A.3d at 536 (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 895 (Del. 2002)).

[27] *Unbound P'rs Ltd. P'ship v. Invoy Hldgs. Inc.*, 251 A.3d 1016, 1023 (Del. Super. Ct. 2021) (internal quotation marks omitted); *see Cent. Mortg. Co.*, 27 A.3d at 537 n.13 ("Our governing 'conceivability' standard is more akin to 'possibility'").

## IV. DISCUSSION

### A. COUNTERCLAIM 1—DECLARATORY JUDGMENT

The Court cannot—via the dismissal sought by BorgWarner here—effectively grant declaratory judgment regarding the proper holder of the VAT refunds. True, contract interpretation is a question of law and can, in the proper instance, be resolved on a motion to dismiss.[28] "But, to achieve dismissal, the motion must be supported by unambiguous contract terms."[29] Moreover, the Court cannot choose between two differing reasonable interpretations of what it might rightly view as ambiguous contract language at the pleadings stage of a dispute.[30] No, to succeed, the dismissal movant's interpretation must be "the *only* reasonable construction as a matter of law."[31]

---

[28] *E.g.*, *Allied Cap. Corp. v. GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006) ("Under Delaware law, the proper interpretation of language in a contract is a question of law. Accordingly, a motion to dismiss is a proper framework for determining the meaning of contract language.").

[29] *Blue Cube Spinco LLC v. Dow Chem. Co.*, 2021 WL 4453460, at *7 (Del. Super. Ct. Sept. 29, 2021) (citing *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 615 (Del. 2003)); *see also GMG Cap. Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 783 (Del. 2012).

[30] *Vanderbilt Income & Growth Assocs., L.L.C. v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del. 1996); *see also Appriva S'holder Litig. Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1292 (Del. 2007) ("Even if [the] Court consider[s] the [movant's] interpretation more reasonable than the [non-movant's], on a Rule 12(b)(6) motion it [is] error to select the 'more reasonable' interpretation as legally controlling.").

[31] *VLIW Tech.*, 840 A.2d at 615 (citation omitted) (emphasis added).

PHINIA claims that interpreting the agreements to return the VAT refund payments would violate SDA §§ 2.01, 2.08, and Schedule 2.08 because it would impair the "working capital" requirements.[32]  But BorgWarner asserts that the TMA controls all tax refund issues and that § 2.08 of the SDA isn't relevant to this issue because tax obligations do not affect the "working capital" provision.[33]

Both parties have a different understanding of the relationship between the obligations and rights in the SDA and TMA.  Ultimately, one could conclude that either party's interpretation is reasonable.[34]  There is no singular reasonable interpretation of the two agreements and their interplay at this time.[35]  In sum, the Court will not make determinations about the proper interpretation of the SDA and TMA to determine the proper holder of the VAT refund on the current pleading record.

Accordingly, the motion to dismiss PHINIA's declaratory judgment counterclaim is **DENIED.**

---

[32]  Def.'s Br. in Opp. to Pl.'s Mot. to Dismiss Def.'s Countercl. ("Def.'s Answering Br.") at 13-16 (D.I. 22).

[33]  Pl.'s Opening Br. for Mot. to Dismiss Def.'s Countercl. ("Pl.'s Opening Br.") at 15-20 (D.I. 14).

[34]  *See Appriva S'holder Litig.*, 937 A.2d at 1292.

[35]  *See VLIW Tech.*, 840 A.2d at 615.

## B. COUNTERCLAIM 2—ESTOPPEL

The promissory estoppel counterclaim will not be dismissed. "Promissory estoppel does not apply [nor should it be employed] . . . where a fully integrated, enforceable contract governs the promise at issue."[36] But since this counterclaim was pled in the alternative,[37] the Court won't dismiss or discount such as a theory until the enforceability of the agreements is certain and the parties have had a full opportunity to conduct discovery and be heard on the issue. Be sure, if the agreement is later deemed enforceable, then the Court won't hesitate to make parties comply with its valid contractual agreements.[38]

Accordingly, the motion to dismiss the estoppel counterclaim is **DENIED.**

## C. COUNTERCLAIM 3—REFORMATION[39]

None debate, reformation is only available in Chancery.[40] So, this Court has

---

[36] *See SIGA Techs., Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 348 (Del. 2013) (citing *Chrysler Corp. (Delaware) v. Chaplake Holdings, Ltd.*, 822 A.2d 1024, 1033-34 (Del. 2003)).

[37] *See* Def.'s Answer & Countercl. ¶¶ 69-73.

[38] *TrueBlue, Inc. v. Leeds Equity Partners IV, LP*, 2015 WL 5968726, at *5 (Del. Super. Ct. Sept. 25, 2015) ("The Court also finds no injustice in requiring the parties to abide by their contractual agreement. Plaintiffs have received the benefit of the bargain, acquired the company they desired, were aware of the payout issue, and had the means to protect themselves from that liability.").

[39] *See, e.g.*, *Travelers Indemnity Co. v. North American Phillips Corp.*, 1992 WL 210560, at *2 (Del. Ch. Aug. 26, 1992). As leave to request cross-designation has been granted and the motion is pending, the Court will address the merits of the reformation counterclaim.

[40] 2/25/2025 Mot. Hr'g. Tr. at 37 (D.I. 45).

no subject-matter jurisdiction over the specific counterclaim seeking this equitable remedy; it's unavailable here.[41] To sidestep this jurisdictional issue PHINIA asked the undersigned to sign on for cross-designation to the Court of Chancery "so that the claims and all of the counterclaims may remain consolidated and proceed *in the Superior Court* in one action."[42] But that proposal doesn't really solve the jurisdictional problem PHINIA has created. At present, there is an equitable counterclaim pled here that *this Court* has no jurisdiction to hear; cross-designation of this *judicial officer* does not confer jurisdiction over the claim upon *this Court.* It only allows this judicial officer to hear a matter still in Chancery that is properly pled there. In effect, right now the reformation claim is a pleading ghost as all agree it was pled in a forum where it has neither substance nor proper abode. While no doubt clunky, the proper solution is to have that claim pled in Chancery—which does have jurisdiction thereover—and then request cross-designation and move for consolidation.

Of course, as noted before by this Court, it is tempting on these occasions to simply terminate such a mis-pled equitable claim or counterclaim right here and

---

[41] *See, e.g.*, *Travelers Indemnity Co.*, 1992 WL 210560, at *2.

[42] D.I. 21 (emphasis added).

now.[43]

And in this case, the temptation is even greater as reformation hasn't been pled with near sufficiency. "The equitable remedy of reformation is 'appropriate when the parties mistakenly believed that the written instrument properly memorialized their agreement when, in fact, it did not.'"[44]

But the claim must be pled with particularity.[45] To achieve this, one of the things PHINIA must plead is "the precise mistake the parties made."[46] And to survive a motion to dismiss, the movant should identify specific oral terms that were

---

[43]  *See Bobcat North America, LLC v. Inland Waste Hldgs, LLC*, 2020 WL 5587683, at \*9-10 (Del. Super. Ct. Sept. 18, 2020) ("The Court can only now lament the fact that [Plaintiff] stands with the many other parties that haven't heeded the Court's admonitions to stop putting it in this jurisdictional and judicial resource-wasting pickle, figuratively shrug its shoulders, and enter an ill-fitting order on that lone count.").

[44]  *Andor Pharms., LLC v. Lannett Co., Inc.*, 2024 WL 1855112, at \*8 (Del. Super. Ct. Apr. 29, 2024) (quoting *Interim Healthcare, Inc. v. Sherion Corp.*, 2003 WL 22902879, at \*7 (Del. Ch. Nov. 19, 2003)).

[45]  A claim of reformation requires:

> (i) that the parties reached a definite agreement before executing the final contract; (ii) that the final contract failed to incorporate the terms of the agreement; (iii) that the parties were similarly mistaken or that [one] knew of [another's] mistake and remained silent; and (iv) the precise mistake the parties made. The requirements are cumulative, and each one must be pled with particularity. Failure to satisfy one requirement is fatal to the claim.

*AECOM v. SCCI Nat'l Holdings, Inc.*, 2023 WL 6294985, at \*6 (Del. Ch. Sept. 27, 2023) (citations omitted).

[46]  *Id.* (citations omitted).

not followed and "show[] how the written terms deviated from those oral terms."[47]

In its counterclaim, PHINIA asks for "reformation of the contracts to comport to the original understanding of the parties that VAT refunds relating to PHINIA's business would remain with PHINIA."[48] And vaguely asks the Court to deem that "[a]ny provisions of the SDA and TMA contrary to this basic assumption constitute a mistake materially affecting the agreed-upon exchange of performances."[49] Even in its answering brief, PHINIA makes no clarification and merely asks the court to rely on "[a]mple extrinsic evidence [that] demonstrates this," but doesn't reference said evidence or cite any exhibits.[50] This just isn't enough.[51]

PHINIA makes no reference to any "precise mistake the parties made."[52] PHINIA fails to aver, with sufficient particularity, any oral terms that weren't followed or explain how the contract was improperly drafted. Without more, the

---

[47] *Acme Markets, Inc. v. Oekos Kirkwood, LLC*, 2023 WL 4873317, at *7 (Del. Ch. July 31, 2023) (referencing *Joyce v. RCN Corp.*, 2003 WL 21517864, at *4 (Del. Ch. July 1, 2003)).

[48] Def.'s Answer & Countercl. ¶ 81.

[49] *Id.* ¶ 79.

[50] Def.'s Answering Br. at 31-32.

[51] *Acme Markets*, 2023 WL 4873317, at *7 ("A claim for reformation is not viable when supported only by averments that a bad deal was memorialized; the Plaintiff needed—and failed—to support the claim with factual averments demonstrating that the Parties reached a definite agreement different than the one memorialized. Without such, the Plaintiff has failed to plead a reasonably conceivable claim for reformation and Count III should be dismissed.").

[52] *See AECOM*, 2023 WL 6294985, at *6 (citations omitted).

Court would not be able to say—were it permitted to speak thereon—that these pleadings set out a reasonably conceivable reformation claim.[53]

Accordingly, BorgWarner's motion is **DENIED** insofar as it seeks outright dismissal of the reformation counterclaim. PHINIA may seek that counterclaim's transfer to the Court of Chancery under 10 *Del. C.* § 1902, or elect to have this Court enter an order of dismissal without prejudice.[54] PHINIA's counsel are to submit an order on notice within 10 days; and if transfer is sought, a status report and amended package seeking cross-designation once the matter is properly before the Court of Chancery.

### D. COUNTERCLAIM 4—BREACH-OF-CONTRACT

PHINIA's breach-of-contract counterclaim regarding the TMA and the SDA survives. To have "well pleaded" a count, PHINIA must simply give BorgWarner adequate notice of the claim.[55] Dismissal of a breach-of-contract claim is only

---

[53] As an aside, the Court finds it concerning that PHINIA claims that it "had no control in the drafting process, [and] did not assume the risk of any mistake." *See* Def.'s Answer & Countercl. ¶ 80. This directly contradicts the "jointly drafted" language in the SDA and TMA. SDA § 11.18; TMA § 10.17. No doubt, "[u]nder Delaware law, sophisticated parties are bound by the terms of their agreement." *See Glaxo Grp. Ltd. v. DRIT LP*, 248 A.3d 911, 919 (Del. 2021).

[54] *See, e.g., Bobcat N.A.*, 2020 WL 5587683, at *10.

[55] *See Vinton*, 189 A.3d at 700; *see also Cent. Mortg. Co.*, 27 A.3d at 536 (citing *Savor, Inc.*, 812 A.2d at 895).

A viable breach-of-contract counterclaim here requires three elements: (1) a contractual obligation, (2) a violation of duty under the contract by BorgWarner, and (3) resulting damages to PHINIA.

proper if BorgWarner "has offered the singular reasonable construction of the operative language as a matter of law, and that construction reveals there has been no breach."[56]

The Court finds that PHINIA has met the burden of making a well pleaded complaint. There are two fully integrated agreements conveying contractual obligations, an alleged violation of BorgWarner failing to pay taxes that were its responsibility, and the alleged harm resulting from PHINIA paying those taxes instead.[57] Also, BorgWarner has not offered "*the* singular reasonable construction of the operative language as a matter of law;" PHINIA's contrary interpretation of the agreements is at least reasonable.[58]

Since the minimal pleading standard is met and there appears to be more than one reasonable interpretation of the at-issue agreements and their interplay, the motion to dismiss PHINIA's breach-of-contract counterclaim is **DENIED.**

---

*See Carlson v. Hallinan*, 925 A.2d 506, 529 (Del. Ch. 2006).

[56] *See Anschutz Corp. v. Brown Robin Cap., LLC*, 2020 WL 3096744, at *9 (Del. Ch. June 11, 2020) (citing *Caspian Alpha Long Credit Fund, L.P. v. GS Mezzanine P'rs 2006, L.P.*, 93 A.3d 1203, 1205 (Del. 2014)).

[57] Def.'s Answer & Countercl. ¶¶ 82-89.

[58] *See Anschutz Corp.*, 2020 WL 3096744, at *9 (citing *Caspian Alpha Long Credit Fund*, 93 A.3d at 1205).

## V. CONCLUSION

Plaintiff BorgWarner's Motion to Dismiss Counterclaims is **DENIED.** Three of PHINIA's four counterclaims survive; the reformation counterclaim may be transferred or dismissed as explained above.

**IT IS SO ORDERED**.

/s/ *Paul R. Wallace*

_____
Paul R. Wallace, Judge

Original to Prothonotary